AUTOMATIC PLATING CO., APPELLANT, *v.* LEACH, ADMR., BUREAU OF UNEMPLOYMENT COMPENSATION, APPELLEE.*

(No. 7364—Decided December 3, 1963.)

*Motion to certify the record (38718) overruled, June 10, 1964. Appeal dismissed, 176 Ohio St., 366.

*Messrs. Brown & Gettler* and *Mr. Jerry F. Venn*, for appellant.

*Mr. William B. Saxbe*, attorney general, *Mr. Harold B. Talbott* and *Mr. Frederic E. Whitker*, for appellee.

TROOP, J.   On or about December 17, 1958, The U. S. Plating Company, a corporation, located at 1923 Thinnes Street, Cincinnati, Ohio, borrowed the sum of $97,500 from National Acceptance Company of Chicago, and on April 14, 1960, borrowed an additional sum of $39,000.   The borrower executed chattel mortgages to secure the sums advanced on each occasion.   The chattel mortgages appear in the record as exhibits D and E. Promissory notes in the principal sums indicated were undoubtedly executed at the same time, for which the mortgages were security, although they do not appear in the record as such, but are established by reference particularly by recital in the assignment contracts shown as exhibits F and G.   An extensive list of physical equipment, designated exhibit "A," is attached to each of the chattel mortgages, which physical equipment, together with inventory materials and after-acquired property, is transferred to the lending company as security for the borrower's notes, possession, however, remaining with the borrower.

Briefly stated, The U. S. Plating Company found itself in financial difficulty, the extreme nature of which appears clearly from the record.   In May of 1961, judging from the record and not from the copies of the instruments used as exhibits, which are too poorly done to be satisfactory, National Acceptance Company of Chicago assigned the chattel mortgages, executed by U. S. Plating, to a newly created corporation, The Automatic Plating Company, appellant herein.   Presumably, the notes involved in the lending transaction were transferred at the same time as appears from the language of the instruments of assignment shown in the record as exhibits F and G.

Following the assignment of the notes and mortgages, Automatic took over the physical plant of U. S. Plating, with the consent and approval of Mrs. Margaret C. Deitsch, who, with her husband, are the owners of the stock of U. S. Plating.

The Bureau of Unemployment Compensation conducted a field audit of the payroll records of U. S. Plating and Automatic sometime after May 5, 1961, at which time Form UCO-384, "Report of Employer on Disposition of Business In Whole or In Part," was signed by Margaret C. Deitsch for U. S. Plating on June 14, 1961, and Form UCO-1, "Report to Determine Liability," was executed by William B. Jackson, as President of Automatic Plating, and filed June 29, 1961, with the bureau. These documents may have been completed at the instance of representatives of the bureau; even so, they are necessary procedural steps and are shown in the record as exhibits C and H.

Under date of July 20, 1961, the bureau determined Automatic to be a successor in interest to U. S. Plating, and established the contribution rate and other matters. (Exhibit No. 1.) Upon review, the determination of July 20, 1961, was affirmed by the Administrator of the Bureau of Unemployment Compensation in a decision issued June 21, 1962, appearing in the record as item No. 6. An appeal from the decision, or redetermination, of the administrator was taken to the Court of Common Pleas of Franklin County, which court affirmed the decision of the administrator, finding Automatic "successor-in-interest under Section 4141.24 (F), Revised Code," to U. S. Plating. The court found the decision of the administrator to be "supported by reliable, probative and substantial evidence" and "was not unlawful, unreasonable nor arbitrary." It is from this entry and final order, filed April 16, 1963, that this appeal is taken.

Section 4141.24 (F), Revised Code, is the controlling statute, application of which to the business transaction before us is basic to our review. The applicable portion of the section reads as follows:

"If an employer transfers his business or otherwise reorganizes such business, the successor in interest shall assume the resources and liabilities of such employer's account, and continue the payment of all contributions due under Sections 4141.01 to 4141.46, inclusive, of the Revised Code. If an employer acquires substantially all of the assets in a trade or business of another employer, or a clearly segregable and identifiable portion of an employer's enterprise, and immediately after the acquisition employs in his trade or business substan-

tially the same individuals who immediately prior to the acquisition were employed in the trade or business or in the separate unit of such trade or business of such predecessor employer, then, upon application to the administrator signed by the predecessor employer and the acquiring employer, the employer acquiring such enterprise is the successor in interest. * * *''

Two tests are to be used in determining whether the succeeding employer is in fact a "successor in interest" to the succeeded employer. The statute provides that an employer is a "successor in interest" if that employer "acquires substantially all of the assets in a trade or business of another employer," and if, "immediately after the acquisition employs" substantially the same individuals employed by the predecessor employer.

The testimony of Mrs. Margaret C. Deitsch indicates clearly that Automatic acquired substantially all of the assets of U. S. Plating when it came into possession of the physical equipment of U. S. Plating. It appears that U. S. Plating continued to exist for the purpose of trying to collect some money, having retained only the accounts receivable of the business after it had been arranged with Automatic to "take over operations." Mrs. Deitsch testified also to having told employees of U. S. Plating that it had been arranged that Automatic would take over at a certain hour on May 5, 1961, and that they would be working for Automatic and would clock out and clock back in. This was done.

Testimony as set out in the preceding paragraph and other testimony contained in the record leaves no doubt that Automatic acquired substantially all of the assets of U. S. Plating and employed the same individuals, personnel of U. S. Plating, immediately after the acquisition as operations continued. The evidence is reliable, probative and substantial. Automatic appears not to challenge this conclusion and impliedly agrees that the specific tests set out in Section 4141.24 (F), Revised Code, have been met. Since this statute is a special one, designed by the Legislature to guide the administration of unemployment compensation, it should be regarded as conclusive. Automatic, however, urges that the first line of subsection (F) talks

about a "transfer" of a business and that in the instant case there was no "transfer."

Automatic's assignments of error suggest that the administrator was wrong in finding Automatic a "transferee" and that Automatic did not succeed to the rights of The National Acceptance Company of Chicago, its assignor. The essence of the argument of counsel for Automatic is that as assignee of the chattel mortgages created by U. S. Plating and given to National it became the title holder, or owner, of the physical equipment pledged by U. S. Plating to National as security for the promissory notes on which U. S. Plating was maker.

The assignment from National to Automatic was appropriate and proper. Counsel for Automatic points out that the basic law in Ohio is that a chattel mortgage transfers legal title to the mortgagee. With this basic concept there is no dispute, but there are other basic concepts present in our law that destroy the attractive simplicity that counsel emphasize in their position. Reference is to 9 Ohio Jurisprudence (2d), 144, Section 2, for other applicable rules, as follows:

"A chattel mortgage is an instrument whereby the owner of personal property transfers the title to such property to another, as security for the payment of money * * *, subject to defeasance on payment * * *. In Ohio, a chattel mortgagee takes a defeasible title to the mortgaged property which is limited to the amount of the debt."

Provisions in chattel mortgages stipulating that a mortgagee may take possession of the property upon default in scheduled payments, or even when he deems it material to his interests, are common in chattel mortgages and approved by the courts. Another rule, long established in Ohio, is that the mortgagee may take possession only by quiet and peaceable means or by use of some legal remedy. In the case of *Bainum v. Midland Acceptance Corp.* (1932), 42 Ohio App., 41, the court says at page 42, as follows:

"* * * The mortgage gave the mortgagee the right to take possession of the automobile on default. It must either get possession by voluntary surrender or court action. * * *"

Summarizing. the basic concept is that while title is in the mortgagee it is subject to defeasance and the balance due on

the debt limits the title, and although, in case of default the mortgage holder is entitled to possession, a distinct act is required, direct and peaceable or legal, to perfect his title and to foreclose the possible interest of the mortgagor, especially if possession of the property remains in the mortgagor.

In the instant case two clauses contained in the assignment documents need to be noted. The first one indicates a conveyance of title from National Acceptance to Automatic and reads as follows:

"* * * have granted, bargained, sold, assigned, transferred and set over * * *."

Following, near the end of the paper, indicating the limitations on the title since it is primarily security for a promise to pay money, the clause appears, as follows:

"* * * to have, use and take all lawful ways and means for the recovery of the said money and interest, and in case of payment to discharge the same as fully as we .... could do if these presents were not made."

Automatic got, by assignment, title to the physical equipment in the plant operated by U. S. Plating and the right to possession. It must be emphasized that first Automatic got a right to receive money which if it could not collect it had a right, as a second step, to take possession. Title to the physical equipment covered by the assigned chattel mortgage passed automatically, but possession requires a process. Statutes operative in Ohio are replete with requirements governing the disposition of property over which possession is taken by a mortgagee. Certain requirements for notice and criteria for good faith and the avoidance of preference are typical. While court decisions approve chattel mortgages providing for possession by the mortgage holder upon default in payment, there is no indication of approval of any manipulative scheme by which an obligor can be maneuvered out of his equity or the rights of bona fide creditors destroyed.

U. S. Plating relinquished any interest it may have had in the mortgaged equipment by consenting to the possession taken by Automatic. Mrs. Deitsch testified to the relinquishment of any right U. S. Plating might have had. On cross-examination, counsel for Automatic reminded Mrs. Deitsch of

the right of National Acceptance to possession in case of default and then queried as follows:

"And that you had no equity, then, after you stopped making payments?"

And followed with an additional question:

"So that, isn't it true that after November or December of 1960 U. S. Plating Company did not have an equity in this equipment?"

In answer to both questions, Mrs. Deitsch replied, "That is right."

Obviously Mrs. Deitsch was led to a conclusion by counsel for Automatic for which she had no basis in legal or practical experience. Nothing whatever appears in the record to establish the presence of an equity in U. S. Plating, or the lack of it. There being no proof to the contrary, it must be assumed that some payments had been made by U. S. Plating, since Mr. Jackson, president of Automatic, testified that he purchased the notes for the balance that was due on them. If the debt had been reduced below the original sum borrowed, then there was an equity favorable to U. S. Plating. This is the equity Mrs. Deitsch, acting as an officer of U. S. Plating, consented to relinquish and the relinquishment perfected the title in Automatic and made its possession absolute. The relinquishment constituted a transfer as contemplated by Section 4141.24 (F), Revised Code.

To hold otherwise would be to approve a type of business dealing in violation of conscience and completely opposed to the public interest. In this instant case, Mr. Jackson, president of Automatic, the transferee-successor to U. S. Plating, testified as to his interest in several competing plating companies and by virtue of his knowledge of the "trade" that he learned of the financial distress of U. S. Plating and determined that its operation would fit into the general plan of operation of his other plants. It was then acquired by purchase of the notes held by National Acceptance and the exercise of the right of possession under the chattel mortgages given as security.

Courts, as has been said, approve the clauses providing for possession upon default, but nowhere in the review of cases is

there any suggestion of approval for the exercise of that right to the utter disregard of the unfortunate mortgagor, figuratively over the economic barrel, as to his possible equity in the property or to those creditors and employees who may have a genuine claim to it.

The administrator was not in error in holding that the underlying transaction herein was a transfer, U. S. Plating having transferred its equity in its mortgaged assets to Automatic by consenting to the "taking over." The Common Pleas Court was correct in its finding as to the evidence and in its approval of the decision of the administrator and its judgment and final order are affirmed.

*Judgment affirmed.*

DUFFY, P. J., and BRYANT, J., concur.